Mr. Brown. May it please the court, I'm Daniel Brown representing the PAR defendants. The district court decision in this case, the court found a lack of case or controversy subject matter jurisdiction based on a single fact finding. And that single fact finding was that the first ANDA applicant, who's not a party to the case, Roxanne, had forfeited their 180-day exclusivity period under a particular forfeiture provision in the post-MMA Hatch-Waxman Act. You basically likely had by now? My interpretation of the court's order was that she found that Roxanne had forfeited their exclusivity because it had been more than 30 months since they had filed and they had not obtained tentative approval. The court also attended to one particular fact that we had referenced in our briefing that indicated that there was some sort of activity at FDA regarding change in and review of the requirements for approval, which is the exemption to the forfeiture event that was in question. And so my reading and our reading of the district court's determination was she found that the 180-day period is not a barrier to PAR's market entry because of the tentative approval forfeiture. And our position is, and we think nobody's going to be standing in front of you today saying, yes, the district court was correct, Roxanne has forfeited. We both agree, and I think in Plaintiff's brief it's at note five, on the structure, which is that at some point FDA will make a determination of whether Roxanne's entitled to exclusivity, and they will consider certain things, and in particular for the tentative approval forfeiture that the district court relied on, that implicates the record that was in front of FDA that we don't have regarding Roxanne's ANDA, and it wasn't in front of the district court. And so in this case, we think there are a couple of fundamental problems with the district court's decision regarding Roxanne's exclusivity. Even if we were to agree with you that perhaps it was incorrect to determine that there was a forfeiture, which seemed to be the basis for the district court's ruling, and we send it back, the district court would still have the discretion to deny the declaratory judgment action. There is a discretion prong, and in at least one of the three main cases here, I think it's one of the two Teva cases, this court addressed the discretion prong in reverse as abuse of discretion, the failure of the district court to find jurisdiction because Congress intended it to be coterminous with the Constitution. But I mean, if the basis for standing is the fact that there hasn't been a forfeiture, so that your client is still sort of behind Roxanne, and it turns out that tomorrow the FDA determines that there was a forfeiture, and I'm not saying that would happen, but the FDA decides that there was a forfeiture, so there's no question about it, then the standing would vanish. That's correct. So we have to maintain standing throughout the litigation, so isn't it likely that if we send it back, this would really do very little other than perhaps start the lawsuit running, and only to have it subsequently terminated? I don't believe that's the case, Your Honor, because what's going on right now is PAR and Medeva are engaged in a full litigation on the other patent that was in the orange book that's basically very, very similar to this patent. We just finished fact discovery, we're waiting on a markman decision, and the patents are so similar that they can readily be litigated together. What our concern is, and the real tangible harm here is that we get through the trial in the case, we get a favorable decision, we invest all the money, and it turns out then after we do that, the FDA comes back and says, no, you don't have a decision on everything, and Roxanne, we've been undergoing some change or review of the requirements for approval, there's been a lot of activity, we only see what's publicly available, we don't see the whole thing, but FDA could make that determination, and here we sit a year from today, wanting to launch, we've invested the money, we want our case, and now FDA says there's exclusivity, Roxanne still doesn't have approval, and we don't know exactly what's going on there, and so we face that tangible harm, and these patents in particular expire in late summer, mid to late summer of 2013, and so there is a window during which PARs made a substantial investment to be on the market before the patents expire, and the market's free for everyone, and so the potential for this exclusivity to derail PARs approval is real, tangible, and there's no redress by starting the litigation later if FDA makes that determination. And so, and I suppose the discretionary issue we were discussing a minute ago is certainly something we would not get involved in, that's strictly within the district court's prerogative. Correct, it's in the first instance, it's within the district court's prerogative, and she did not do that yet, she didn't reach that problem because she found no case or controversy. Is there a pleading problem here, because there is no specific pleading on any forfeiture or even the fact that you're injured by virtue of having to stand behind Roxanne? We did plead that we're injured generally, we did not plead that Roxanne has exclusivity because in our view that's an FDA determination, and we think this is very analogous to a standard declaratory judgment action of non-infringement of a patent, or of invalidity of a patent. Is there an equality issue here, or the specificity of the pleading as it relates to the issue of standing based on exclusivity? I don't believe so, but if there were, the judge should have just given us permission to re-plead, but I think in this case there's not an issue of the pleading, because we don't have to plead that Roxanne is entitled to exclusivity, we may have other defenses, if we get into litigation with FDA there may be other arguments. This is an argument, and in the two principal cases addressing this issue, the Carrico case and the Teva V. Asi case, the language that the Federal Circuit there used was removing the possibility of a delay and clearing the path for approval, and the standard set of things that happen in all Hatch-Waxman cases, we don't have approval yet, we're still litigating other patents, other parties are competing to be first and get on the market first, and we don't have approval yet. That's all envisioned and clearly contemplated by Congress in the Hatch-Waxman Act. Just to be clear, are you then or are you not relying on some kind of a resolution of the exclusivity with Roxanne? We are, if I understand the question correctly, we want to preserve the right to make any arguments that we find available to us at the day that we are faced with FDA approval and the FDA says there's an exclusivity in place, we want to preserve all rights we have to challenge that. Is it within PAR's control as to whether or not Roxanne has 180 days of exclusivity? The only provision that we have control over whatsoever is the ability to obtain the court decision and cause the court decision trigger. Every other item listed in the forfeiture provision is solely within the first filer's discretion, Roxanne. They can withdraw the ANDA, they can withdraw their certification, the patents can expire. Well, you see where I'm trying to go. You're asking us to resolve a question concerning a third party that's not represented here, whose viewpoint hasn't been heard, and that neither side here can control. We're asking for quite the opposite, Your Honor. We're asking for the determination that Roxanne's exclusivity has not been decided, that that is not a question for today. You're asking us to resolve an issue concerning Roxanne. Well, to find that the district court's resolution of an issue concerning Roxanne was improper because Roxanne was not before the district court. We don't have any briefs from Roxanne? Correct, and neither did the district court, and so the district court didn't have the record of Roxanne's ANDA. The court said the probability, as I recall the opinion, was not an absolute decision. Do I misremember? Likely? I believe in some instances the court used the word likely, but my recollection, I thought at the end conclusion, the court found that because Roxanne had forfeited, there would not be a barrier, 180 days would not be a barrier sufficient to create a case or controversy vis-a-vis PAR. And there was also a finding that you had alleged in your counterclaim that Roxanne forfeited exclusivity. And that's simply not there. So in your view that's a clearly erroneous finding of fact? That is a clearly erroneous finding of fact, and as I carefully perused the wording, I don't think she found specifically that we pled that Roxanne had forfeited. She somehow gleaned facts from our pleadings that led her to conclude, is my interpretation of it, that Roxanne had forfeited. But there's no pleading anywhere that we've made that Roxanne has engaged in a forfeiture event. But getting to Judge Newman's point, it's your burden to establish that you have standing, and it seems to me that one of the allegations here is that there has not been a forfeiture. If you can't establish that, then there's a problem. We don't believe there is a problem because the purpose of the Declaratory Judgment, the standard purpose for the Declaratory Judgment Act, is to resolve legitimate uncertainties. And so, for example, if I want to file a Declaratory Judgment action that someone's patent is invalid, I don't have to stipulate that I infringed the patent. I just have to stipulate that there is an actual controversy between the parties and there's well-settled case law for setting that out. There may be some uncertainty as to the respective rights of the parties, but not an uncertainty as to the factual predicate on which that injury is supposedly based. Here, we believe the respective rights of the parties as between Parr and Plaintiff and Roxanne creates an actual controversy between Parr and Plaintiff because they've listed this patent in the Orange Book. It is a barrier to us coming on. If exclusivity exists when we try to go to market, then we are prohibited from going to market. And so, that's something that is beyond our control and the statute explicitly gives us control vis-à-vis the court decision trigger. And in both the Carrico case and the Teva v. Esai case, the court found that that was injury in fact. And despite all of the normal vagaries of hatchwack litigation where there are possibilities that can intervene. Can we decide this appeal without deciding whether there has been a forfeiture or not? I believe the court can simply by relying on the Carrico case. We think the Carrico case is controlling and that there are multiple patents in the Orange Book. They sued on fewer than all the patents and Covenant not to sue doesn't divest that. But Carrico was predicated on the fact that there was this indefinite exclusivity period that presented an injury. And if the exclusivity has been forfeited here by Roxanne, then that aspect, even though specifically on the facts of Carrico are different, but at least that aspect of Carrico is not present here. If there were a finding binding on Carrico and FDA that there is no exclusivity. If there is clearly no exclusivity and that's binding on those parties and we don't have to face that a year from now when we try to go to market, then that's correct. We don't have any reason to litigate this case. But everybody here agrees, FDA will make that determination at some point based on FDA's record that wasn't before the district court and isn't of record on the appeal. I'm down to about a minute and I'd like to reserve a little bit of time. Should we save you a little bit of time? Thank you. Your Honor, as you picked up, I'm Christopher Sipes on behalf of the D.J. defendants, the plaintiff in the case Medeva and Warner Chilcott. Let me start with, Judge Lind, with your question. Does this court or did the district court have to resolve whether Roxanne, a third party to this action, had forfeited? The answer is no. It is par's burden to show that it faces a harm which is real and imminent. That it is likely to be held up by Roxanne's exclusivity. Not whether or not Roxanne has in fact exclusivity. This court dealt with this kind of issue expressly in the Janssen case in 2008. In Janssen, there was potential harm. The second applicant, it's a very similar circumstance here. In that case, Teva was the first applicant. Apotex was the second applicant. Apotex argued two potential harms to it in delay from the 180-day exclusivity. One was the 180-day delay itself that it wished to trigger early. The court said you can't claim harm from the 180 days itself. That was part A. Part B, it bears on this case. Part B said if Teva, the first applicant, launches right when it can, right when the earliest expiring patent expires, then sure, it will only be delayed by those 180 days. But what if the first applicant, Teva, doesn't launch then? What if they suffer some kind of delay? Then we might be held up. If we can bring this D.J. action out, we'll make sure that that potential risk that the first applicant delay doesn't hold us up. This court held that that was not a sufficient allegation of real and imminent harm to support jurisdiction. And this is what it said specifically because it shows what the standard is here. This is at 540 F. 3rd at 1363. At no time between the filing of the counterclaim through the final judgment was there any basis to conclude that Teva will or is likely to delay and bring its generic product to market in the future. And it then found, therefore, that the alleged harm from the possibility that Teva might delay triggering the exclusivity was too speculative to support D.J. jurisdiction. That's what we have here. No one actually believes that Roxanne has exclusivity. Let me tell you why. Their ANDA was filed in June of 2007. It's been almost 55 months. 55 months. We all agree the statutory requirement is to get tentative approval in 30 months. They still don't have it. As far as counsel is pointed to a citizen's petition, as potentially tolling the period to get tentative approval, that citizen's petition was pending for 6 months. It was filed by Warren and Chilcott in February 2010. It was answered by FDA in August 2010. Even subtracting 6 months from 55 months is well over 30 months. In fact, the 30 months ran before Warren and Chilcott even filed that citizen's petition. That's what the district court found. Do you agree with your opponent that this was a erroneous finding of fact that the forfeiture period was forfeited? You said everybody agrees with that. That was wrong. Your Honor, I don't believe the district court made an error. I don't think the district court believed that it was determining Roxanne's rights. What the district court's fact-finding was is that it was very, very unlikely that Roxanne had retained accessibility. That there was every reason to believe it had forfeited. In fact, we know all the parties believe that. And that as a result, and this is a quote from the district court at A11, on page 11, this means that any potential barrier that could result from subsequent approval and reinstatement of Roxanne's marked accessibility is speculative at best and does not meet the Article 3 requirement of actual or imminent injury for Stanley. I believe the district court did exactly what it is required to do under Article 3. Determine whether or not there is sufficiently concrete harm here to support invocation of declaratory judgment jurisdiction. And it found that there was no concrete, no real harm because the idea that Roxanne still has accessibility is so unlikely, is so speculative that it doesn't support invocation of the court's jurisdiction. PAR has the burden to show it's real and concrete. It can't do so. Nobody believes it's even likely that Roxanne still has accessibility. So that's one defect. Let me be clear what's not, just to be this case. PAR has never said that our covenant to sue is not adequate. There's no patent uncertainty. So they can't, this is not a case such as Teba v. Novartis, the 2007 case where your Honor, Judge Mayer, I believe you were on the panel there. The D.J. actually was permitted to proceed because the patent holder did not give a covenant not to sue. That's not this case. Like Jansen, here there's a covenant not to sue and the burden falls on them to show a real and concrete harm from 180 days. We've shown that's too speculative. There's another problem with their D.J. jurisdiction. First is the harm is far too speculative as the district court found. But this case actually presents an issue of first impression. If you go beyond that, if you decide that there is sufficient harm here, this is the first case that has come up, Your Honor, that actually involves the forfeiture provisions that were introduced in 2003. In the Jansen case, the D.J. provision, what's called the civil action for patent certainty, that was applicable to Jansen. But the forfeiture provisions were not because the 180-day acquisition in the Jansen case predated it. That's true of Carrico, it's true of the Teva case, it's true of Jansen. Here, that's not true. This is the first time this court has confronted with those forfeiture provisions. And the key one at issue here, the one that he says is his sole basis for wanting to maintain this action, the idea of getting a D.J. action to trigger exclusivity has a new limitation. And it's not in dispute. The new limitation is that the D.J. action has to be brought by an applicant with tentative approval. This is set forth, and I apologize for the statutory site, but that's the way the statute is. It's 355J5DiIIbbAA. That's the citation. This is the provision introduced in 2003, and Congress made a very important change. It's no longer the case that any anti-applicant can bring a D.J. action, can bring an action that has the effect of forfeiting exclusivity. Instead, it's only a first applicant or any other applicant which other applicant has received tentative approval. Congress cut it back so that for somebody like Parr, it says brought by that applicant. Parr has to get tentative approval before it can trigger. This is a fundamental Article III requirement, redressability. Would a D.J. in this action that Parr seeks to bring trigger a forfeiture of exclusivity? No. Why not? Parr also, like Roxanne, does not have tentative approval. Parr must get tentative approval before it brings its D.J. action. That's what the statute says. This is what FDA has said. Your view is that they couldn't initiate the proceeding, but then have it not be effective until they receive tentative approval? Correct, Your Honor. The statute is written that way. It says brought by that applicant. But it's important for two reasons. The statute is not entirely clear based on the fact that they stuck that provision in a parenthetical. I won't defend the drafting of Hatch-Waxman. But it does say brought by that applicant. But here's the reason why. You can't have it go in the other order. You can't get the D.J. action and then get the tentative approval. Two problems with that. First, there's a 75-day window once the trigger is put up for the forfeiture for the first applicant to market. Under that approach, the Parr approach of having the D.J. first, that 75 days runs from the D.J. It's a retroactive forfeiture. In other words, if tomorrow Parr got their declaratory judgment, in this case, and in six months they got tentative approval, suddenly Roxanne or whoever the first applicant is in a case where you really had 180-day exclusivity, suddenly they would discover that not having launched six months minus 75 days earlier, they had forfeited. Because the statute clearly says that the date that counts for the 75 days is the date of declaratory judgment. And there's another reason, Your Honor. The idea here is it's meaningless to get a declaratory judgment of non-infringement for a formulation which is not approvable. First, you've got to put your coin in the turnstile and show that the declaratory judgment of non-infringement is an approvable formulation. If you get the D.J. of non-infringement, if the applicant gets the D.J. of non-infringement, they can amend their formulation and go on in six months or a year or more to get their tentative approval and their final approval. You don't know that it's not necessarily the same formulation. I understand that during the approval process there may be some give and take and some revision to things like labeling and things of that sort, but is it customary or common that the formulation would in any way change? I can't speak to how common it is. It certainly can and does happen. This court had a case last year, Eli Lilly, where it extended the 30-month stay. It affirmed that because the ad applicant amended its formulation, it can be done. In fact, in this case, these are facts that have arisen within the last month. We brought them to the attention of PAR. Roxanne said they may amend their formulation. They're not going to pursue the current formulation. They may amend a different formulation. It is not unheard of. It is allowed. It is not... It does happen. I don't have statistics for how often. We know it does happen. Certainly, if an ad applicant is able to obtain D.J. jurisdiction in order to trigger exclusivity and then has trouble getting approval, it could easily amend to get approval, having already cleared out the exclusivity. That's not the way the statute's written and it doesn't make sense to construe it that way. So we have... Something though that does seem sort of counterintuitive or contrary to the whole idea behind Hatch-Waxman in saying that generic actions should be delayed. The whole purpose of Hatch-Waxman is to get these issues resolved early. Your Honor, actually there's two aspects to watch here. One is this uncertainty, this patent uncertainty. Certainly, if they didn't have a covenant, they can quickly clear out any patent uncertainty. That's not this case. The second issue, which is the one this case presents, is a much harder issue. This Court, the D.C. Circuit, the F.B.A., have all struggled with. How to make the 180-day exclusivity work? One concern is to make sure that it works in a reliable and predictable way. That means that it's not always in the interest to forfeit exclusivity as quickly as possible. What Compton's concerned with is undo delay. But at the same time, if the 180 days is to act as a real incentive for parties to file patent challenges, they have to have a fair opportunity to count on the 180 days. So when you look at the 2003 changes, there's no counterbalancing changes. They introduce the 30-month tentative approval requirement leading to forfeiture. So that, in fact, you make sure that that first option is working towards approval. At the same time, they narrow down the trigger of forfeiture from a declaration of non-infringement to those later applicants who have tentative approval. That's perfectly sensible balance. It's true that it may not be the fastest way to ensure that exclusivity is forfeited as much as possible, but that's not the statutory goal. The statutory goal is to make sure is to balance the incentive to file the patent challenges with making sure they don't get parked too long. In the same way that Hatch-Wasserman itself is a very delicate balance between preserving our incentive to develop new drugs or new uses for drugs and the generic incentive to file antics. So, you know, our concern here is what Parr is asking for is extraordinary in a case where no one actually believes Roxanne has exclusivity on the mere speculation that perhaps they do because FDA hasn't finally determined they can bring that action and that's completely contrary to Jensen and the requirement that the Supreme Court has made clear of real and imminent harm. And two, to be able to bring their action before even they have tentative approval to obtain a declaration potentially of non-infringement on the provable itself. And we think that fails for those two separate reasons. For lack of harm and lack of addressability. And we believe that allowing a case this extreme to go forward really means we all know that many drugs have many patents listed for them. Development of drug products is a long, complicated process that involves a lot of innovation. The injunction from courts, the wise injunction is try to narrow the dispute down in any individual case. We've tried to do that. But if they can go forward with this D.J. action, then in every case any later applicant can file a D.J. on every listed patent and even covenants not to sue won't cut that off. That's too much, Your Honor, and it doesn't serve the statutory purpose. Thank you, Your Honor. Thank you, Mr. Seitz. Mr. Brown. Just to address a handful of things quickly. I'd first like to address plaintiff's position that tentative approval is a jurisdictional requirement for D.J. That's just flat wrong. It's in our reply brief in careful detail. The statute says 45 days after we send our notice letter if they don't sue us, we get a right to bring a D.J. And there's no expectation or any belief by anyone that 45 days would be enough time. You say they covenanted not to sue. So why does it matter? That is a separate issue. That's this issue, right? The issue of whether or not we need tentative approval before we can sue. The statute has a specific jurisdictional section. Tentative approval doesn't appear there. We understand. It's just not relevant here, right? In this case, the forfeiture provision there's nothing in the statute. The forfeiture provision provides that from the decision in the case at 75 days later, there's a forfeiture event. There's nothing in there that suggests that tentative approval has to happen before we can even bring the lawsuit. That's just a guarantee of multiplicity of litigation since we're already sued under other Orange Book patents in the same family and under the same circumstances. You said before that she made a flat-out finding that market exclusivity had been forfeited. As I look at the decision, does the language and they do it at all? It doesn't seem like it's anywhere near a flat-out finding. At least two places she says, appears to have forfeited. Appears to have forfeited. Likely. Whatever word was inconsistent with flat-out finding and that has, in the beginning of the subject, they said default. That seems like a misleading statement to me. I certainly apologize for that, your honor. I looked at that as soon as I... That was the key to your argument when you stood up here the first time. The section that was, in our view, important appears on page 11 and it says I guess I read it more strongly. It says, thus, in the 30-month period to obtain tentative approval according to defendant's allegations appears to have expired in April 2010. Appears to. And that's... I was reading that as a stronger finding. She says, can't discern whether or cannot discern whether approval or extension will ever be granted. Didn't make a finding. It's just the opposite. Two sentences later, she says, in making a conclusion as to standing, I must rely on defendant's allegations in the counterclaims which allegations indicate that first filer, Roxanne, forfeited his exclusivity. And in that sentence, she doesn't use appears or any qualifying language. She somehow derived something from our pleadings and we can't figure out what. And she says here allegations indicate that first filer, Roxanne, forfeited his exclusivity. So that was at least one of the statements that I was relying on that was not qualifying. Is there anything else you need to tell us? We're short of time. Let me just look quickly at my notes. I would simply refer the court to the CARACO decision at page 1289 and page 1293 note 11. And there the court in that case noted that this can all be resolved if instead of giving us a covenant not to sue they agree to a stipulation of non-infringement which removes this barrier altogether. So if their concern is about litigating the case they don't want to litigate a stipulation of non-infringement that meets the statutory requirements of the court and the decision prompt would resolve all of this and we think that indicates that plaintiffs believe that there is uncertainty and they're relying on that uncertainty to interfere with our approval. Thank you very much. Thank you Mr. Brown. Mr. Seitz. The case is taken under submission.